IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 21-CV-1776-KMT

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

          Plaintiff,

v.

SKIHAWK CAPITAL PARTNERS, LLC,
THE CONVERGENCE GROUP, LLC,
CLEMENT M. BORKOWSKI,
SEAN A. HAWKINS, and
JOSEPH P. SCHIFF,

          Defendants.

## SCHEDULING ORDER

### 1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

Date of Conference:

Appearances:

### 2. STATEMENT OF JURISDICTION

This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)], Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), and 78aa], and Sections 209(d) and 214 of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-9(d) and 80b-

1

14]. Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14 and 28 U.S.C. § 1391(b)].

### 3. STATEMENT OF CLAIMS AND DEFENSES

a. Plaintiffs:

First, from 2016 to present, SkiHawk, Borkowski, and Hawkins, while acting as the investment adviser to the private fund ASI Healthcare Capital Partners I, L.P. (the "Healthcare Fund"), engaged in conflicts of interest and breaches of fiduciary duties by causing (1) the Healthcare Fund to invest in companies that Borkowski and Hawkins controlled and had an interest in, (2) the Healthcare Fund to pay a company that Borkowski and Hawkins partially owned to provide services to the fund, and (3) the companies in which the Healthcare Fund invested to enter into agreements for services with entities owned and managed by Borkowski and Hawkins, paying those entities millions of dollars, without disclosing these specific conflicts and making misrepresentations about the review process for conflicted transactions, in violation of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, Rule 10b-5 thereunder, Sections 206(1), 206(2), and 206(4) of the Advisers Act, and Rule 204(4)-8 thereunder. In the alternative, Borkowski and Hawkins aided and abetted SkiHawk's violations of Sections 206(1), 206(2), and 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.

Second, from 2016 to 2020, SkiHawk, TCG, Borkowski, and Hawkins made false and misleading statements to investors in another private fund they managed, the ASI Capital Income Fund, LLC (the "Income Fund") by representing hat investors' investments were secured by UCC-1 financing statements when, in fact, they were not. SkiHawk thereby violated Sections 17(a)(1) and 17(a)(3) of the Securities Act, Section 10(b) of the Exchange Act, Rule 10b-5 thereunder, Section 206(4) of the Advisers Act, and Rule 206(4)-8 thereunder, from 2016 through at least 2018; TCG, thereby violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, Rule 10b-5 thereunder; and Borkowski and Hawkins thereby violated Sections 17(a)(1) and 17(a)(3) of the Securities Act, Section 10(b) of the Exchange Act, Rule 10b-5 thereunder, and Section 206(4) of the Advisers Act, and Rule 206(4)-8 thereunder or, in the alternative, Borkowski and Hawkins aided and abetted SkiHawk's and TCG's violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.

Third, Defendants, while serving as investment advisers to the Income Fund and another private fund, ASI Capital, LLC ("ASI Capital"), breached the fiduciary duty owed to those funds and made false and misleading statements to investors and prospective investors by overvaluing two assets held by those funds by millions of dollars, making it appear that the funds were performing better than they were and allowing them to charge higher fees. SkiHawk, Borkowski, and Hawkins thereby violated Sections 17(a)(1) and (3) of the Securities Act, Section 10(b) of the Exchange Act, Rule 10b-5 thereunder, Section 206(4) of the Advisers Act, and Rule 206(4)-8 thereunder in

connection with the overvalued AFT investment in the 2014 and 2015 ASI Capital financial statements or, in the alternative, Borkowski and Hawkins aided and abetted SkiHawk's violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder. Schiff thereby violated Sections 17(a)(1) and (3) of the Securities Act, Section 10(b) of the Exchange Act, and Rules 10b-5(a) and (c) thereunder and aided and abetted SkiHawk's violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act and Section 206(4) of the Advisers Act, and Rule 206(4)-8 thereunder.

    b. Defendants:

The SEC investigation of Defendants arose out of a routine examination of an entity that is not a party to this case. Defendants cooperated throughout the investigation by providing the SEC with voluminous records, sitting for sworn interview testimony, and agreeing to toll certain limitations periods. After three years and thousands of documents, the SEC filed this action alleging baseless violations of the federal securities laws based on a mere four discrete factual scenarios. As will be shown, the SEC fails to allege any colorable claim of any wrongdoing, much less fraud.

First, the SEC alleges that SkiHawk, Borkowski, and Hawkins made inadequate disclosure of conflicts of interests and made false or misleading statements about how conflicts would be managed in securities offering documents provided to investors in the Healthcare Fund from 2016 to present. The SEC does not allege that Defendants *failed* to disclose conflicts of interest; rather, it alleges merely that Defendants' disclosures were *inadequate*. The evidence will establish, however, that (i) the disclosures were adequate;

(ii) Defendants relied on the advice and counsel of their then-attorneys when making the disclosures; and (iii) statements regarding management of conflicts of interest were not false or misleading, especially at the time they were made. These disclosures, thus, fail to give rise to any violations of the federal securities laws.

Second, the SEC alleges that, from 2016 to 2020, SkiHawk, TCG, Borkowski, and Hawkins made false and misleading statements to investors in the Income Fund that their investments were secured by a UCC-1 financing statement when they were not. Notably, claims of fraud fail when information contradicting a purportedly false or misleading statement is public. Whether a UCC-1 financing statement has been recorded is a matter of public record. Thus, these Defendants could not, and did not, commit fraud on investors who could confirm the accuracy of statements regarding the UCC-1 financing statement with publicly available information. Even so, SkiHawk, TCG, Borkowski, and Hawkins relied on their then-business counsel to record the UCC-1 financing statement in question and believed he had done so. Unbeknownst to them, he had not. That is not a colorable basis to assert, much less prove, securities law violations. In any event, no investor attempted to foreclose on the security interest that is the subject of the UCC-1 financing statement. And, as soon as Defendants were made aware of their prior counsel's oversight, a UCC-1 financing statement was properly recorded. No violations exist relating to the UCC-1 financing statement.

Third, the SEC alleges that SkiHawk, Mr. Borkowski, Mr. Hawkins, and Mr. Schiff breached their fiduciary duties and made false and misleading statements to ASI

Capital based on their purported overvaluation of promissory notes in 2014 and 2015 held by ASI Capital that it purchased from an appliance store. The SEC's claims in this regard attempt to contrive fraud or negligence out of purported non-compliance with GAAP. Indeed, the essence of the SEC's allegations in this regard is that these Defendants wrote down the value of the assets (including by 33% percent in the 2015 financial statements), but the write down of that value was not enough. These threadbare allegations do not give rise to violations of the federal securities laws.

Finally, the SEC alleges that TCG, Mr. Borkowski, and Mr. Hawkins breached their fiduciary duties and made false and misleading statements while allegedly acting as investment advisors to ASI Capital based on their purported overvaluation of a gold mine asset held by ASI Capital. Specifically, the SEC alleges that these Defendants reflected in ASI Capital's 2019 and 2020 financial statements that it owned a higher percentage of the company that owns the gold mine than was actually owned. The increased ownership, however, was the result of a plan of reorganization that was, in essence, a financing plan to avoid ASI Capital's foreclosure on the owner of the mine, Caldera Holdings, LLC, for its default on promissory note payments it owed to ASI Capital. The evidence will establish that the reorganization plan which resulted in ASI Capital's increased ownership and, thus value, was authorized under the relevant operating documents and was agreed to by all parties with the assistance of their respective counsel. No securities law violations occurred as a result.

## 4. UNDISPUTED FACTS

The parties continue to discuss stipulations.

## 5. COMPUTATION OF DAMAGES

The SEC does not seek damages. Instead, the SEC seeks (1) permanent injunctions against each of the Defendants, enjoining them from future violations of the securities laws; (2) disgorgement of all Defendants' ill-gotten gains from the unlawful activity set forth in this Complaint, together with prejudgment interest, as permitted by *Liu v. SEC*, 140 S. Ct. 1936 (2020) and Section 6501 of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, 134 Stat. 3388 (Jan. 1, 2021), which amended Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)]; (3) third tier civil penalties against Defendants under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and (4) any and all other relief that the Court may deem appropriate.

Defendants deny they owe any disgorgement or penalties.

## 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a. Date of Rule 26(f) meeting: August 18, 2021

b. Names of each participant and party he/she represented.

<u>On behalf of Plaintiff U.S. Securities and Exchange Commission:</u>
Polly A. Atkinson
Mark L. Williams
Securities and Exchange Commission
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000
Atkinsonp@SEC.gov
WilliamsML@SEC.gov

<u>On behalf of all Defendants:</u>
Paul L. Vorndran
Blaine K. Bengtson
JONES & KELLER, P.C.
1675 Broadway, 26th Floor
Denver, CO 80202
pvorndran@joneskeller.com
bbengtson@joneskeller.com

c. Statement as to when Rule 26(a)(1) disclosures were made or will be made.

Initial Rule 26(a)(1) will be made by September 1, 2021.

d. Proposed changes, if any, in timing or requirement of disclosures under <u>Fed. R. Civ. P. 26(a)(1)</u>.

None

e. Statement concerning any agreements to conduct informal discovery:

Prior to filing its complaint, the SEC conducted a non-public investigation related to this matter. In connection with that investigation, the SEC obtained documents from defendants and third parties and sworn investigative testimony. Upon request and provision of any necessary hard drives or other storage devices, the SEC will make those documents and testimony transcripts available to defendants. No work product of

the SEC will be provided. The parties will continue to discuss the possibilities for informal discovery.

    f. Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.

The parties will use a unified exhibit numbering system for depositions and will discuss telephonic or remote depositions as depositions are scheduled.

    g. Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

The SEC expects that the majority of discoverable documents in this matter will be maintained in electronic form. The SEC has preserved such information since the inception of its investigation in a searchable database. Upon request and the provision of any necessary storage devices, the SEC will provide that database to defendants.

    h. Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

The parties had a productive discussion about the possibilities for a prompt settlement and have agreed to have further discussions.

## 7. CONSENT

All parties have consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

    a. Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

Presently, the parties agree to proceed using the presumptive limits for the number of depositions and interrogatories. The parties acknowledge that the

complexities of this case may warrant the taking of several depositions beyond the presumptive limit, although the parties anticipate additional depositions likely would be narrow and limited both in scope and in duration. The parties, thus, reserve the right to request leave of court to exceed the presumptive limits and further agree not to oppose any such request for leave by another party to the extent the request is reasonable.

    b. Limitations which any party proposes on the length of depositions.

       None at this time.

    c. Limitations which any party proposes on the number of requests for production and/or requests for admission.

       The parties agree to the presumptive limits under the rules.

    d. Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions:

       February 9, 2022

    e. Other Planning or Discovery Orders

Defendants anticipate filing a partial motion to dismiss the Complaint pursuant to the F.R.C.P. 12(b)(6). Although that motion would not result in dismissal of the entire case, Defendants expect it could serve to eliminate some claims or narrow some of the discoverable issues. Accordingly, absent an order staying any discovery, the parties agree to work together to first focus discovery, to the extent reasonable, on aspects of the case that are not at issue in the contemplated motion to dismiss.

## 9. CASE PLAN AND SCHEDULE

a. Deadline for Joinder of Parties and Amendment of Pleadings:

October 1, 2021

b. Discovery Cut-off:

July 29, 2022

c. Dispositive Motion Deadline:

August 26, 2022

d. Expert Witness Disclosure

1. The parties shall identify anticipated fields of expert testimony, if any.

The SEC anticipates retaining experts in the fields of accounting, valuation, and the standard of care, duties, and fiduciary duties applicable to an investment adviser and may retain any expert necessary to rebut any expert retained by Defendants.

Defendants anticipate retaining experts to opine on the extent to which clients may rely on attorneys regarding disclosures in securities offering documents, interpretation of and implementation of organization offering documents, and issues in secured transactions. Defendants further anticipate retaining experts necessary to rebut any expert retained by Plaintiff, such as experts in the fields of accounting, valuation, standards of care, duties, and fiduciary duties.

2. Limitations which the parties propose on the use or number of expert witnesses.

None

3. The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before April 15, 2022.

4. The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before May 27, 2022.

   e. Identification of Persons to Be Deposed:

      Each Defendant

      Persons identified on Defendants' Rule 26(a) disclosures or through discovery.

      Persons identified on Plaintiffs' Rule 26(a) disclosures or through discovery.

## 10. DATES FOR FURTHER CONFERENCES

a. Status conferences will be held in this case at the following dates and times:

_____.

b. A final pretrial conference will be set subsequent to the dispositive motions deadline.

.

## 11. OTHER SCHEDULING MATTERS

a. Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement: none.

b. Anticipated length of trial and whether trial is to the court or jury. Fifteen days, to a jury.

c. Because the parties have consented to Magistrate Judge jurisdiction, all proceedings will be held in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

*The scheduling order may be altered or amended only upon a showing of good cause.*

DATED at Colorado Springs, Colorado, this 30th day of August, 2021.

BY THE COURT:

_____
United States Magistrate Judge