IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 21–cv–01776–MDB

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

SKIHAWK CAPITAL PARTNERS, LLC,
THE CONVERGENCE GROUP, LLC,
CLEMENT M. BORKOWSKI,
SEAN A. HAWKINS, and
JOSEPH P. SCHIFF,

     Defendants.

---

## ORDER

---

This matter is before the Court on "Defendants Clement M. Borkowski, The

Convergence Group, LLC, Sean A. Hawkins, Joseph P. Schiff, and SkiHawk Capital Partners,

LLC's Partial Motion to Dismiss the Complaint for Failure to State a Claim Pursuant to F.R.C.P.

12(b)(6)." (["Motion"], Doc. No. 19.) Plaintiff United States Securities and Exchange

Commission ["SEC" or "Plaintiff"] has responded in opposition to the Motion, and Defendants

SkiHawk Capital Partners, LLC ["SkiHawk"], The Convergence Group, LLC ["TCG"], Clement

M. Borkowski ["Mr. Borkowski"], Sean A. Hawkins ["Mr. Hawkins"], and Joseph P. Schiff

["Mr. Schiff"] [collectively, "Defendants"] have replied. (["Response"], Doc. No. 22; ["Reply"],

Doc. No. 23.) The parties have consented to proceed before a United States magistrate judge for

all purposes, including the entry of a final judgment under 28 U.S.C. § 636(c). (Doc. No. 14-15.)

After considering the pleadings, the parties' briefings, and the applicable law, the Motion is

**DENIED**.

## STATEMENT OF THE CASE[1]

This is a civil enforcement action brought by the SEC against two investment advisory

firms, SkiHawk and TCG, and three individual owners and managers of those firms, Mr.

Borkowski, Mr. Hawkins, and Mr. Schiff. (Doc. No. 1 at 1.) Plaintiff alleges that, for years,

Defendants have repeatedly defrauded three funds they advise, as well as the investors in those

funds. (*Id.*)

SkiHawk, a Colorado limited liability company, has been a Colorado-registered

investment adviser since 2011. (*Id.* at 6.) SkiHawk is owned by Mr. Hawkins and Mr.

Borkowski. (*Id.*) TCG is a Puerto Rico limited liability company, and is not registered as an

investment advisor. (*Id.*) TCG is owned by Mr. Borkowski, Mr. Hawkins, and Mr. Schiff, who is

a licensed public accountant ("CPA"). (*Id.* at 6-7.)

Since 2016, SkiHawk has managed ASI Healthcare Capital Partners I, L.P. (the

"Healthcare Fund"), a Delaware limited partnership that invests in health care facilities. (*Id.* at 5-

7.) Mr. Borkowski, Mr. Hawkins, and Mr. Schiff are partial owners of the Healthcare Fund's

general partner, ASI Healthcare Capital Partners GP, LLC. (*Id.* at 7.)

From 2012 through 2018, SkiHawk managed ASI Capital, LLC ("ASI Capital"), a

Wyoming limited liability company that makes equity and debt investments in various

---

[1] The following facts are derived from the Complaint and are presumed to be true for purposes of
this Order.

companies. (*Id.* at 5-7.) TCG has managed ASI Capital since 2019. (*Id.*) Mr. Borkowski and Mr. Hawkins were partial owners of ASI Capital from its formation through 2018. (*Id.* at 7.) Mr. Schiff was the contract CFO for ASI Capital from 2014 through 2018. (*Id.* at 7-8.)

From 2015 through 2018, SkiHawk also managed ASI Capital Income Fund, LLC (the "Income Fund"), a Wyoming limited liability company that made bond offerings to individual investors, as well as equity and debt investments in various companies. (*Id.* at 5-6, 8.) SkiHawk managed the Income Fund through an advisory contract with ASI Capital, the Income Fund's owner. (*Id.* at 8.) TCG has managed the Income Fund since 2019 through a similar contract. (*Id.*)

Plaintiff alleges that: (1) SkiHawk, Mr. Borkowski, and Mr. Schiff caused the Healthcare Fund to engage in "conflicted transactions," and failed to disclose those conflicts of interests; (2) SkiHawk, TCG, Mr. Borkowski, and Mr. Hawkins made false and misleading statements to the Income Fund's investors about UCC-1 filings; and (3) the Defendants breached their fiduciary duties owed to the funds by making false and misleading statements. (*Id.* at 1-3.)

Based on these allegations, on June 29, 2021, Plaintiff commenced this lawsuit against Defendants, asserting ten causes of action: (1) "Fraud by an Investment Adviser: Section 206(1) of the Advisers Act [15 U.S.C. § 80b-6(1)]" (Against SkiHawk, Mr. Borkowski, and Mr. Hawkins); (2) "Fraud by and Investment Adviser: Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)]" (Against All Defendants); (3) "Aiding and Abetting Fraud by an Investment Adviser Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. § 80b-6(1) & (2)]" (Against Mr. Borkowski and Mr. Hawkins in the alternative); (4) "Fraud on Investor in a Pooled Investment Vehicle: [Section] 206(4) of the Advisers Act [15 U.S.C. § 80b-6(2)] and Rule 206(4)-8 [17 C.F.R. § 275/206(4)-8] Thereunder" (Against All Defendants); (5) "Aiding and

Abetting Fraud on Investors in a Pooled Investment Vehicle: Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(2)] and Rule 206(4)-8 [17 C.F.R. § 275/206(4)-8] Thereunder" (Against Mr. Schiff, Mr. Borkowski, and Mr. Hawkins in the alternative); (6) "Fraud (Misstatements and Omissions): Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 C.F.R. § 240.10b-5]" (Against SkiHawk, TCG, Mr. Borkowski, and Mr. Hawkins); (7) "Aiding and Abetting Fraud (Misstatements and Omissions): Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 C.F.R. § 240.10b-5]" (Against Mr. Schiff); (8) "Fraud: Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) [17 C.F.R. § 240.10b-5(a) and (c)]" (Against All Defendants); (9) "Fraud: Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) and (3)]" (Against All Defendants); and (10) "Fraud: Sections 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)]" (Against SkiHawk, TCG, Mr. Borkowski, and Mr. Hawkins). (*Id.* at 46-53.)

Defendants now move to partially dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 19.) Defendants' arguments are threefold. First, Defendants argue that the second and fourth claims must be dismissed as to TCG and Mr. Schiff, because Plaintiff has not plead plausible claims against TCG and Mr. Schiff for violations of Section 206 of the Investment Advisers Act. (*Id.* at 5, 7, 8.) Second, Defendants argue that the first, sixth, eighth, and ninth claims must be dismissed as to all Defendants, because Plaintiff has not plead plausible scienter-based claims of securities fraud against any Defendant. (*Id.* at 8-21.) Third, Defendants argue that the first and second claims must be dismissed as to SkiHawk, Mr. Borkowski, and Mr. Hawkins, because Plaintiff has not plead plausible breach of fiduciary claims against SkiHawk, Mr. Borkowski, and Mr. Hawkins. (*Id.* at 21.)

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a Rule 12(b)(6) motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, a court identifies "the allegations in the complaint that are not entitled to the assumption of truth," i.e., those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679-81. Second, a court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, the claim survives the motion to dismiss. *Id*. at 679.

That being said, a court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, a court typically may not look beyond the pleadings. *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010). "Pleadings," for purposes of a Rule 12(b)(6) motion to dismiss, however, include attachments to the complaint, documents incorporated into the complaint by reference, and information subject to judicial notice. *Tellabs, Inc*, 551 U.S. at 322; *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). Documents attached to a motion to dismiss are considered part of the pleadings, if they are referred to in the complaint, and are central to the plaintiff's claims. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

## ANALYSIS

### I.     Second and Fourth Claims for Alleged Violations of the Investment Advisers Act Against TCG and Mr. Schiff

Defendants argue that the second and fourth claims must be dismissed as to TCG and Mr. Schiff, because Plaintiff has not plead plausible claims against TCG and Mr. Schiff for violations of Section 206 of the Investment Advisers Act. (Doc. No. 19 at 5, 7, 8.) Specifically, Defendants

argue that Plaintiff failed to plausibly allege that TCG and Mr. Schiff were "investment advisers," as defined by the Investment Advisers Act, to ASI Capital and the Income Fund in 2019 and 2020. (*Id.* at 6-8.)

Section 206 of the Investment Advisers Act makes it unlawful for "investment advisers" to "employ a device, scheme, or artifice to defraud a client" or "engage in a transaction, practice, or course of business that operates as a fraud or deceit upon a client." *Malouf v. S.E.C.*, 933 F.3d 1248, 1262 (10th Cir. 2019) (citing 15 U.S.C. § 80b-6(1)-(2)). The Investment Advisers Act defines "investment adviser" as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities." [2] 15 U.S.C. § 80b-2(a)(11). This definition excludes "any . . . accountant . . . whose performance of such services is solely incidental to the practice of his profession." *Id.*

**A. TCG**

Plaintiff alleges the following with respect to TCG: "[o]n January 1, 2019 . . . TCG began acting as an investment advisor to ASI Capital and the Income Fund"; "TCG, for compensation, engaged in the business of advising ASI Capital and the Income Fund as to the value of securities and as to the advisability of investing in, purchasing, or selling securities"; "[s]tarting on January 1, 2019, TCG was paid a 2% management fee and 20% performance fee by ASI Capital"; "TCG handled all aspects of managing ASI Capital and the Income Fund, including

---

[2] Under the Investment Advisers Act, "person" is defined to include both natural person and companies. 15 U.S.C. § 80b-2(a)(16).

performing valuations of investments"; "TCG . . . determine[d] a final value for ASI Capital's interest in Thorin"; and "TCG . . . [was] responsible for the Thorin investment valuations in the 2019 and 2020 Income Fund and ASI Capital financial statements and bankruptcy filings." (Doc. No. 1 at ¶¶ 43-46, 195, 203.)

In the Motion, Defendants argue that Plaintiff's allegations merely show that TCG was "*managing* ASI Capital's and the Income Fund's day-to-day operations," and thus, "ASI Capital compensated TCG for its management rather than investment adviser services." (Doc. No. 19 at 6 (emphasis in original).) Defendants also argue that Plaintiff did not allege that TCG performed valuations of ASI Capital and Income Fund investments "while advising others or while promulgating analysis or reports regarding the value of securities." (*Id.* (citing *Goldstein v. S.E.C.*, 451 F.3d 873, 880 (D.C. Cir. 2006).) Additionally, Defendants argue that SkiHawk—not TCG—acted as an investment advisor to ASI Capital and the Income Fund in 2019 and 2020. (*Id.* at 7.)

But when accepted as true and viewed in the light most favorable to Plaintiff, the allegations plausibly show that TCG received compensation for advice about investing in, purchasing, or selling securities. This is sufficient to meet the definition of an "investment adviser" under the Investment Advisers Act. *See S.E.C. v. Ahmed*, 308 F.Supp.3d 628, 652 (D. Conn. 2018) (finding that the defendant was an investment adviser because the defendant received compensation to advise the funds as to the value of securities, and recommended that the funds purchase and sell securities); *see also Abrahamson v. Fleschner*, 568 F.2d 862, 870 (2d Cir. 1977) ("we believe that the general partners as persons who managed the funds of others for compensation are 'investment advisers' within the meaning of the statute"); *S.E.C. v. Criterion*

*Wealth Mgmt. Servs., Inc.*, 599 F.Supp.3d 932, 950 (C.D. Cal. 2022) (finding that the defendants acted as investment advisers when they managed the investments and collected management fees after brokering the transactions); *cf. Shaper v. Zadek*, 557 F.Supp.3d 969, 983 (N.D. Cal. 2021) (dismissing the plaintiff's claim because there was no allegation that the defendants were compensated for giving advice).

Defendants' argument that Plaintiff failed to allege that TCG performed valuations of ASI Capital and Income Fund investments "*while* advising others or while promulgating analysis or reports regarding the value of securities" is unpersuasive. (Doc. No. 19 at 6 (emphasis added).) The statute defines "investment adviser" as "any person [1] who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, *or* [2] who, for compensation and as part of a regular business, *issues or promulgates analyses or reports concerning securities*." 15 U.S.C. § 80b-2(a)(11) (emphasis added). The requirements are phrased in the alternative, not as two parts of one. *See United States v. Quarrell*, 310 F.3d 664, 669 (10th Cir. 2002) ("If the language is clear and unambiguous, the plain meaning of the statute controls"). Here, Plaintiff has adequately alleged that TCG was an investment adviser under the first prong of the definition, and that is all that is required. Additionally, Defendants' reliance on *Goldstein* is misplaced. *Goldstein* concerned whether or not the investors in a hedge fund constitute "clients" of the fund's adviser for purposes of the "fewer than fifteen clients" exemption from registration. 451 F.3d 873; *see generally* 15 U.S.C. § 80b-3(b)(3) (2002). That is not the case here. The Court finds Plaintiff has adequately plead that TCG was an investment adviser under the Investment Advisers Act.

**B.  Mr. Schiff**

Plaintiff alleges the following with respect to Mr. Schiff: "[f]rom January 1, 2019 to the present, Schiff was an investment adviser to ASI Capital and the Income Fund"; "Schiff, for compensation, engaged in the business of advising ASI Capital and the Income Fund as to the value of securities and as to the advisability of investing in, purchasing, or selling securities"; "Schiff received compensation for the period 2019 to the present for his advisory work through payments received from TCG"; "Schiff is an owner of and exercising control of TCG, including in his role as President, and formerly, as CFO"; "Schiff was also a member of the TCG's asset management committee and played a role in managing certain investments"; and "Schiff . . . [was] responsible for the Thorin investment valuations in the 2019 and 2020 Income Fund and ASI Capital financial statements and bankruptcy filings." (Doc. No. 1 at ¶¶ 56-59, 203.)

Defendants argue that Plaintiff's allegations are conclusory, and do not establish that Mr. Schiff was acting as an investment advisor. (Doc. No. 19 at 8; Doc. No. 23 at 14.) Defendants contend that Plaintiff failed to plausibly allege that Mr. Schiff was compensated "based on services he performed as an investment adviser rather than as a manager of other aspects of ASI Capital . . . [or] the Income Fund," or that any alleged conduct was "more than incidental to his role as a certified public accountant acting as CFO." (Doc. No. 19 at 8.)

The Court finds that Plaintiff has sufficiently alleged that Mr. Schiff received compensation for advice given in connection with investing in, purchasing, or selling securities. *See Ahmed*, 308 F.Supp.3d at 652. Likewise, the allegations plausibly show that Mr. Schiff acting more than incidental to his role as a certified public accountant acting as CFO. Mr. Schiff received compensation for his advisory work, and was a member of TCG's asset management

committee. *Cf. Crabtree Invs., Inc. v Aztec Enter., Inc.*, 479 F. Supp. 448, 450 (M.D. La. 1979) (dismissing the plaintiffs' claim because the allegations and affidavits made clear that the defendant was simply employed as an accountant, acted as such throughout the transaction, and was not "in the investment advisory business for compensation"). And in any event, the issue of whether a person holds themselves out to the public as providing investment advisory services, or something less than that, cannot be resolved on a motion to dismiss because it is a factual dispute requiring, at a minimum, summary judgment evidence. *See Douglass v. Beakley*, 900 F. Supp.2d 736, 745 & n.11 (N.D. Tex. 2012) (finding the issue of whether the defendants held themselves out to the public as providing investment advisory services or not was factual dispute requiring, at a minimum, summary judgement evidence, and could not be resolved on a motion to dismiss).

## II.   First, Sixth, Eighth, and Ninth Claims for Securities Fraud Against All Defendants

Next, Defendants argue that the first, sixth, eighth, and ninth claims must be dismissed as to all Defendants, because Plaintiff has not plead plausible scienter-based claims of securities fraud against any Defendant. (Doc. No. 19 at 8-21.)

Plaintiff brings its first claim under Section 206(1) of the Investment Advisers Act, which as noted above, prohibits investment advisors from employing any device, scheme, or artifice to defraud a client. *See generally* 15 U.S.C. § 80b-6(1). Plaintiff brings its sixth and eighth claims under Section 10(b) and Rule 10b-5(b) of the Securities Exchange Act,[3] which prohibit any

---

[3] Defendants argue that the seventh claim must also be dismissed because it "alleges that Mr. Schiff aided and abetted violations of Section 10(b) and Rule 10b-5," and that claim cannot survive "where Plaintiff has failed to plausibly allege a primary violation of those provisions." (Doc. No. 19 at 9 n.5.) Because the Court finds Plaintiff has adequately pled its sixth and eighth claims under Section 10 and Rule 10b-5, Defendants' argument as to the seventh claim, also fails.

person from using or employing a manipulative or deceptive device in connection with the purchase or sale of any security. *See generally* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Plaintiff brings its ninth claim, in part, under Section 17(a)(1) of the Securities Act,[4] which prohibits any person from employing any device, scheme, or artifice to defraud in the offer of sale of any securities. *See generally* 15 U.S.C. § 77q(a)(1).

Each of these claims require proof of scienter. *See Malouf*, 933 F.3d at 1263 (noting that claim under Section 206(1) requires proof of scienter); *S.E.C. v. GenAudio Inc.*, 32 F.4th 902, 921 (10th Cir. 2022) (noting that a claim under Section 10 and Rule 10b-5 requires proof of scienter); *S.E.C. v. Wolfson*, 539 F.3d 1249, 1256-57 (10th Cir. 2008) (noting that a claim under Section 17(a)(1) requires proof of scienter). Scienter is an "intent to deceive, manipulate, or defraud." *GenAudio*, 32 F.4th at 921 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976)). Absent intentional conduct, a showing of recklessness may satisfy the intent requirement. *See GenAudio*, 32 F.4th at 921; *Malouf*, 933 F.3d at 1261; *S.E.C. v. Smart*, 678 F.3d 850, 857 (10th Cir. 2012). Recklessness is defined as "conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *GenAudio*, 32 F.4th at 923.

---

[4] Although Plaintiff brings its ninth claim under Section 17(a)(1) and (3) of the Securities Act, Defendants only seek dismissal of the ninth claim "to the extent it is based on Section 17(a)(1)." (Doc. No. 19 at 9.)

Additionally, Rule 9(b) requires that a party alleging fraud or mistake must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).[5] In other words, a party alleging fraud or mistake must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Dean v. Wright Med. Tech., Inc.*, 593 F. Supp. 3d 1086, 1094-95 (D. Colo. 2022) (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000)). "Malice, intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally."[6] Fed. R. Civ. P. 9(b). Even so, Rule 9(b) must still be read in conjunction with the "less rigid"—"though still operative"—strictures of Rule 8. *Titan Feeding, LLC v. Corey Cattle Co.*, No. 19-cv-02541-PAB-SKC, 2022 WL 4182458, at *10 (D. Colo. Sep. 13, 2022).

Defendants argue that Plaintiff has not alleged sufficient facts showing that: (1) SkiHawk, Mr. Borkowski, and Mr. Hawkins acted with scienter regarding their disclosure of conflicts of interest to support its first, sixth, eighth, and ninth claims; (2) SkiHawk, TCG, Mr.

---

[5] Although not disputed by the parties, the Court notes that the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") do not apply to the SEC. Indeed, "[w]hile the SEC must meet the particularity standard under Rule 9(b), it need not satisfy the pleading requirements under the Private Securities Litigation Reform Act ("PSLRA")." *S.E.C. v. China Ne. Petrol. Holdings Ltd.*, 27 F. Supp. 3d 379, 387 (S.D.N.Y. 2014); *see also* 15 U.S.C. § 78u-4(b)(2) (imposing a heightened pleading standard for scienter on "private action" only).

[6] The parties dispute whether the SEC may simply state that scienter existed to satisfy the Rule 9(b) pleading requirements for scienter. (Doc. No. 22 at 10; Doc No. 23 at 3.) Under Rule 9(b), the SEC may allege scienter generally, but those general allegations must be supported by other facts such that a plausible existence of scienter can be inferred. *See S.E.C. v. Kovzan*, 807 F. Supp. 2d 1024, 1040 (D. Kan. 2011) (finding that the SEC's general allegations of scienter were supported by a number of facts supporting a plausible case of scienter); *S.E.C. v. Steffes*, 805 F. Supp. 2d 601, 618 (N.D. Ill. 2011) ("While the above-cited *scienter* allegations are conclusory, those allegations are adequately supported by other facts alleged in the complaint").

Borkowski, and Mr. Hawkins acted with scienter regarding the UCC-1 filings to support its sixth, eighth, and ninth claims; and (3) SkiHawk, Mr. Borkowski, Mr. Hawkins, and Mr. Schiff acted with scienter regarding the 2014 and 2015 AFT valuations to support its sixth, eighth, and ninth claims. (*Id.*) The Court disagrees and will address each topic in turn.

### A. Scienter as to Alleged Conflicts of Interest

Plaintiff alleges that, between 2016 and 2019, Mr. Borkowski and Mr. Hawkins had material undisclosed conflicts of interest with the Healthcare Fund, and despite these conflicts, SkiHawk, Mr. Borkowski, and Mr. Hawkins caused the Healthcare Fund to engage in conflicted transactions. (Doc. No. 1 ¶¶ 78-96; Doc. No. 22 at 10.) Plaintiff outlines three areas involving allegedly conflicted transactions. (*See generally* Doc. No 1 at ¶¶ 83-96, 100.) First, Plaintiff alleges that SkiHawk, Mr. Borkowski, and Mr. Hawkins caused the Healthcare Fund to invest approximately 90% of its assets in three portfolio companies, and the general partners and/or managers of these portfolio were owned by Mr. Borkowski and Mr. Hawkins. (*Id.* at ¶¶ 83-87, 100.) Second, Plaintiff alleges that that SkiHawk, Mr. Borkowski, and Mr. Hawkins caused the Healthcare Fund to pay ASI Capital, which was partially owned by Mr. Borkowski and Mr. Hawkins, for administrative services. (*Id.* at ¶¶ 88-89, 100.) Third, Plaintiff alleges that SkiHawk, Mr. Borkowski, and Mr. Hawkins caused the three portfolio companies to enter into various agreements worth millions of dollars with entities that were owned and controlled by Mr. Borkowski and Mr. Hawkins. (*Id.* at ¶¶ 90-96, 100.)

Plaintiff alleges that SkiHawk, Mr. Borkowski, and Mr. Hawkins failed to adequately disclose these conflicts to the Healthcare Fund or its investors, made false and misleading statements about these conflicts in the Healthcare Fund PPMs and financial statements, and

engaged in deceptive acts, including disseminating false and misleading Healthcare Fund PPMs and financial statements that each of them reviewed and approved to investors and prospective investors. (*Id.* at ¶¶ 97-129.) As support, Plaintiff alleges that the Healthcare Fund's PPM failed to disclose the specific conflicts of interest, the Healthcare Fund PPMs from 2016 to 2019, and the 2018 financial statements "falsely described the mechanism by which the fund would purportedly manage conflicts of interest," and the advisory board that allegedly reviews for conflicts of interests did not approve the conflicted transactions at issue. (*Id.* at ¶¶ 97-111, 119-23, 128.)

Finally, Plaintiff alleges that SkiHawk, Mr. Borkowski, and Mr. Hawkins knew, or were reckless in not knowing, and should have known, that these conflicts of interest were material, that they were advising on conflicting transactions, that the Healthcare Fund was entering into conflicted transactions, that the advisory board was not being utilized as described, and that their conduct was deceptive. (*Id.* at ¶¶ 87, 89, 96, 107-08, 110, 125-26, 129.)

These allegations are sufficient to survive a motion to dismiss. The Complaint details the alleged conflicted transactions, including the dates of the transactions, the parties involved, and the financial implications. The Complaint also describes the alleged false and misleading statements made in the PPMs and financial statements about the handling of conflicts of interests, and points to specific omitted facts. (*See id.* at ¶¶ 113.) Finally, it describes the parties responsible for these statements. Simply put, Plaintiff has adequately set forth the "who, what, when, where, and how" of the alleged conduct, such that scienter can be inferred. *McGee v. Novartis Pharm. Corp.*, CNo. 22-cv-00024-RM-SKC, 2022 WL 17454521, at *2 (D. Colo. Dec.

6, 2022); *see also Steffes*, 805 F.Supp.2d at 618 ("While the above-cited *scienter* allegations are conclusory, those allegations are adequately supported by other facts alleged in the complaint").

    Referencing excerpts from Healthcare Fund PPMs attached to the Motion,[7] Defendants argue that their statements provided adequate detail about potential or existing conflicts, and that any alleged omitted details were immaterial. (Doc. No. 19 at 11-13.) However, these arguments raise questions of fact that the Court does not consider on a motion to dismiss. *See S.E.C. v. Cetera Advisors LLC*, No. 19-cv-02461-MEH, 2020 WL 1905046, at *4 (D. Colo. Apr. 17, 2020) (finding that the materiality of a statement or omission is a question of fact that should not be resolved on a motion to dismiss); *see also S.E.C. v. Hug*, No. 19-16290, 2022 WL 855659, at *9 (D.N.J. Mar. 22, 2022) ("Only if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality is it appropriate for the district court to rule that the allegations are inactionable as a matter of law").

    Defendants also argue that any existence of scienter is weakened because the disclosures were "drafted by their legal counsel," and were attempts to provide warnings to investors about potential risk. (Doc. No. 19 at 13-14 (citing *Ezra Charitable Tr. v. Tyco Int'l, Ltd.*, 466 F.3d 1, 8 (1st Cir. 2006); *Geffon v. Micrion Corp.*, 249 F.3d 29, 37 (1st Cir. 2001)); Doc. No. 23 at 5.) But in making this argument, Defendants rely on cases applying the heightened pleading standard of the PSLRA, not the less stringent pleading requirements applicable here. Even setting this distinction aside, determining whether a warning "weakened" the inference of scienter raises questions of fact that are beyond the scope of a motion to dismiss.

---

[7] The Court will consider these documents because the Complaint refers to them and they are central to Plaintiff's claims. *GFF Corp.*, 130 F.3d at 1384.

Next, Defendants argue that Plaintiff failed to allege facts that SkiHawk, Borkowski, and Hawkins "knew, believed, or had reason to believe that statements made in the PPMs regarding the Advisory Board's role were false *when they were made*." (Doc. No. 19 at 14-15 (emphasis in original).) Defendants maintain that Plaintiff's allegations—particularly concerning how the advisory board "would review" related party transactions—were "forward-looking and could not have been proven or disproven at the time they were made." (*Id.*) The Court finds this argument unavailing. The Complaint alleges multiple, successive misrepresentations in the Healthcare Fund PPMs, spanning from 2016 to 2019, and it alleges that despite approving the PPMs, SkiHawk, Mr. Borkowski, and Mr. Hawkins did not submit any conflicts or potential conflicts for review. (*See* Doc. No. 1 at ¶¶ 103, 105, 116-17, 126.) When accepted as true and viewed in the light most favorable to Plaintiff, these allegations plausibly show that SkiHawk, Mr. Borkowski, and Mr. Hawkins knew, or were reckless in not knowing, and should have known, that the statements made in the PPMs were false when they were made.

Finally, Defendants argue that Plaintiff failed to allege that SkiHawk, Mr. Borkowski, and Mr. Hawkins knew, or were reckless in not knowing, and should have known, that their statements about the advisory board, and how it would manage conflicts of interests, "presented a danger of misleading investors." (Doc. No. 19 at 16-17 (citing *City of Phila. v. Fleming Cos., Inc.*, 264 F.3d 1245, 1261 (10th Cir. 2001)).) Specifically, Defendants argue that Plaintiff must demonstrate: (1) that Defendants knew of the potentially material fact; and (2) that Defendants "***knew that failure to reveal the potentially material fact would likely mislead investors***." (*Id.* (quoting *Fleming*) (emphasis in original).)

However, the knowledge requirement "may be satisfied under a recklessness standard by the defendant's knowledge of a fact that was so obviously material that the defendant must have been aware both of its materiality and that its non-disclosure would likely mislead investors." *S.E.C. v. Curshen*, 372 F. App'x 872, 881 (10th Cir. 2010) (quoting *Fleming*). Here, Plaintiff has alleged that SkiHawk, Mr. Borkowski, and Mr. Hawkins "knew (1) the extent of Borkowski's and Hawkins' conflicts of interest with the Healthcare Fund, (2) that the Advisory Board did not review conflicted transactions, and (3) that the Advisory Board did not exist after 2019." (Doc. No. 1 at ¶ 126.) Plaintiff has also alleged that "[t]he statements were material to investors because a reasonable investor would consider conflicts of interest important and consider it important that the represented steps for reviewing conflicts of interest did not occur." (*Id.* at ¶ 127.) Although these allegations of materiality are relatively broad and generalized, they are sufficient for this stage of the proceedings. *See Cetera Advisors LLC*, 2020 WL 1905046, at *4. Indeed, materiality of a statement or omission is generally a question of fact that should not resolve on a motion to dismiss. *Id.*

Thus, the Court finds Plaintiff has adequately plead facts showing that SkiHawk, Mr. Borkowski, and Mr. Hawkins acted with scienter regarding their disclosure of conflicts of interest to support its first, sixth, eighth, and ninth claims.[8]

---

[8] Defendants argue that the third claim for aiding and abetting violations of Section 206(1) must also be dismissed because "Plaintiff has failed to plausibly allege a primary violation of that statute." (Doc. No. 19 at 8 n.3.) Because the Court finds Plaintiff has adequately pled its first claim under Section 206(1), Defendants' argument as to the third claim also fails.

### B. Scienter as to Alleged False Statements About UCC-1 Filings

Plaintiff alleges that SkiHawk, TCG, Mr. Borkowski, and Mr. Hawkins represented to investors in the Income Fund that "the Income Fund's bonds were secured by UCC-1 financing statements granting the bond holders a security interest in the Fund's investment portfolio, when, in fact, they were not." (Doc. No. 1 at ¶ 130.) Specifically, Plaintiff alleges that: the Income Fund PPMs, financial statements, and bonds contained false statements that the Fund's bonds were secured by UCC-1 financing statements, when in fact, from 2016 to 2020, "no UCC-1 filings had ever been made for the Income Fund bonds and the bonds were not otherwise collateralized or secured." (*Id.* at ¶¶ 134-38.)

Plaintiff also alleges that SkiHawk, Mr. Borkowski, and Mr. Hawkins were responsible for the misleading statements through the end of 2018, while TCG, Mr. Borkowski, and Mr. Hawkins were responsible for the misleading statements from 2019 to present; and that "Borkowski and Hawkins, and SkiHawk and TCG through Borkowski and Hawkins, each reviewed and approved and had ultimate authority over, the Income Fund PPMs, financial statements, and bonds before they were provided to investors." (*Id.* at ¶¶ 139-41.) Plaintiff also alleges that SkiHawk, TCG, Mr. Borkowski, and Mr. Hawkins knew, or were reckless in not knowing, and should have known, that the statements in the PPMs, financial statements, and bonds were false and misleading, because they had taken no steps to make UCC-1 filings. (*Id.* at ¶¶ 144-45.)

Defendants argue that Plaintiff fails to allege that SkiHawk, TCG, Mr. Borkowski, and Mr. Hawkins knew that these statements were false at the time they were made. (Doc. No. 19 at 18.) However, the Complaint alleges multiple false statements, spanning from 2016 to 2020, and

it alleges that SkiHawk, TCG, Mr. Borkowski, and Mr. Hawkins reviewed, approved, and had ultimate authority over the PPMs, financial statements, and bonds. (Doc. No. 1 at ¶¶ 138-40.) When accepted as true and viewed in the light most favorable to Plaintiff, these allegations plausibly show that SkiHawk, TCG, Mr. Borkowski, and Mr. Hawkins knew, or were reckless in not knowing, and should have known, that the statements made in the PPMs, financial statements, and bonds were false at each time they were made.

Defendants also argue that Plaintiff's allegations of scienter fail because UCC-1 filings are a matter of public record, and thus, any investor could verify for themselves whether any UCC-1 filings had been made. (Doc. No. 19 at 18-19 (citing *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 544 (S.D.N.Y. 2009).) Defendants' reliance on *PXRE* is unpersuasive. *PXRE* explains—and Defendants quote in the Motion—that allegedly misleading information must be non-public "in order to raise a *strong inference* of intent" under the PSLRA's heightened pleading standard. 600 F.Supp.2d at 544 (emphasis added). In other words, *PXRE* merely explains that the availability of public information "weakens" any inference of scienter, which, as noted above, raises questions of fact that are not appropriate to resolve on a motion to dismiss. Moreover, *PXRE* applies the heightened pleading standard and is therefore of little use to this Court, which applies the less stringent pleading requirements of Rule 9(b).

**C. Scienter as to the 2014 and 2015 AFT Valuations**

Plaintiff alleges that SkiHawk, Mr. Borkowski, Mr. Hawkins, and Mr. Schiff provided financial statements that inflated the value of ASI Capital's "AFT investment" to investors of ASI Capital. (Doc. No. 1 ¶¶ 154-63.) ASI Capital's AFT investment involved "the purchase of

notes from a single Colorado Springs based appliance store ("AFT")." (*Id.* at ¶ 157.) Plaintiff

alleges that SkiHawk, Borkowski, Mr. Hawkins, and Mr. Schiff knew that:

- "AFT had stopped making payments on the notes in 2013, and the notes were in default in 2014";

- "AFT had conveyed the underlying collateral for the notes to a third party, and AFT's owner and manager had used AFT money to fund other businesses and to purchase $200,000 in land for his personal home";

- "the AFT investment was worth significantly less than $3.2 million," and as of 2015, "AFT had not made any further payments on the notes";

- "AFT had not provided any additional collateral," and "ASI Capital had sued AFT for fraud and non-payment of the notes."

(*Id.* ¶¶ 157-163, 166, 172, 181.) Despite this knowledge, SkiHawk, Mr. Borkowski, Mr.

Hawkins, and Mr. Schiff allegedly "did not reduce the value of the AFT investment in ASI

Capital's financial statements as of December 31, 2014, and only reduced it by 33% as of

December 31, 2015," and they provided these financial statements to ASI Capital investors. (*Id.*

at ¶¶ 154, 162-63.)

Plaintiff also alleges that ASI Capital's 2014 and 2015 audited financial statements

specified they were prepared in accordance with generally accepted accounting principles

("GAAP"), but despite these statements, the AFT investment was not valued in accordance with

GAAP, and Mr. Borkowski and Mr. Hawkins "instructed the audit firm engaged to audit" the

2014 and 2015 financial statements to "exclude the AFT investment from its audit, which the

audit firm noted on its report." (*Id.* at ¶ 164, 167, 169, 173.)

Finally, Plaintiff alleges that SkiHawk, Mr. Borkowski, Mr. Hawkins, and Mr. Schiff knew, or were reckless in not knowing and should have known: "that the statements that the ASI Capital 2014 and 2015 audited financial statements were prepared in accordance with GAAP were false"; that SkiHawk's "statements that the ASI Capital 2014 unaudited financial statements and the ASI 2014 and 2015 audited financial statements were prepared in accordance with GAAP" were false; and "that they were approving and providing to investors and prospective investors financial statements that inflated the value of the AFT investment and represented that they were prepared in accordance with GAAP when they were not." (Doc. No. 1 at ¶¶ 172, 179, 181.)

Defendants argue that Plaintiff's allegations fail because the alleged GAAP violation is insufficient to establish scienter. (Doc. No. 19 at 19-21.) That may be true, but that is not all the Complaint alleges. Plaintiff alleges facts indicating that the value of the AFT investment had substantially declined, that SkiHawk, Mr. Borkowski, Mr. Hawkins, and Mr. Schiff knew of these facts, yet reviewed and approved financial statements inflating the value of the AFT investment, and that Mr. Borkowski and Mr. Hawkins instructed the audit firm to exclude the AFT investment from its audit. Thus, the Court finds the Complaint's allegation of a GAAP violation, combined with other allegations, sufficient to create an inference of scienter. *See S.E.C. v. Stansbury Holdings Corp.*, No. 06-cv-00088-REB-BNB, 2007 WL 552248, *2-3 (D. Colo. Feb. 20, 2007) (rejecting the defendants' argument on a motion to dismiss that the SEC's scienter claims were based solely on a violation of GAAP, where the SEC had alleged the defendant knew "six specific events" that substantially impaired the values of the defendants' assets); *S.E.C. v. Espuelas*, 698 F. Supp. 2d 415, 427 (S.D.N.Y. 2010) (finding that the SEC had

alleged more than a mere GAAP violation or accounting irregularities, where the SEC had also alleged the defendants mischaracterized transactions to improperly recognize revenue); *S.E.C. v. Bardman*, 216 F. Supp. 3d 1041, 1053 (N.D. Cal. 2016) (finding that the SEC's complaint was sufficient to survive a motion to dismiss, where it alleged both that the GAAP rule that was violated and the particulars of the defendants' noncompliance with that rule); *S.E.C. v. Guenthner*, 212 F.R.D. 531, 534 (D. Neb. 2003) (finding that the SEC's complaint was sufficient to survive a motion to dismiss, where it alleged a GAAP violation in combination with other allegations, including a scheme to inflate earnings reported in public quarterly filings).

Defendants also argue that the value of the AFT investment was eventually reduced by 33%, and that undercuts any inference of scienter. (Doc. No. 19 at 21.) That argument is not persuasive. Whether or not the investment was reduced (and during what period or time), and whether or not a 33% reduction was sufficient, are questions of fact that cannot be resolved on a motion to dismiss.

### III.   First and Second Claims for Breach of Fiduciary Duties Against SkiHawk, Mr. Borkowski, and Mr. Hawkins

Defendants argue that the first and second claims must be dismissed as to SkiHawk, Mr. Borkowski, and Mr. Hawkins, because Plaintiff has not plead plausible breach of fiduciary duty claims against them. (*Id.*) Section 206 of the Investment Advisers Act "establishes a statutory fiduciary duty for investment advisers to act for the benefit of their clients, requiring advisers to exercise the utmost good faith in dealing with clients, to disclose all material facts, and to employ reasonable care to avoid misleading clients." *S.E.C. v. Moran*, 922 F. Supp. 867, 895-56 (S.D.N.Y. 1996) (citing *S.E.C. v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191, 191 (1963)).

Here, Defendants appear to argue that SkiHawk, Mr. Borkowski, and Mr. Hawkins only owed a fiduciary duty to the Healthcare Fund, not the Healthcare Fund's investors.[9] (Doc. No. 19 at 21-22 (citing *Goldstein*, 451 F.3d at 880).) Defendants also argue that the allegedly false statements in the PPMs and financial statements were not made by SkiHawk, Mr. Borkowski, and Mr. Hawkins to the Healthcare Fund. (*Id.* at 22.) Rather, they "*were made by the Healthcare Fund* to its investors or potential investors." (*Id.* (emphasis in original).)

In response, Plaintiff notes that the first and second claims are not limited to fraud by the Healthcare Fund on its investors. (Doc. No. 22 at 21-22.) Rather, Plaintiff's first and second claims allege that "SkiHawk, Borkowski, and Hawkins defrauded the Healthcare Fund, their client, in violation of Sections 206(1) and (2)." (*Id.* at 22.)

In their Reply, Defendants argue that, because the Complaint alleges that the Healthcare Fund was managed by SkiHawk, and that the Healthcare Fund's general partner, ASI Healthcare Capital Partners GP, LLC, is owned by Mr. Hawkins, Mr. Borkowski, and Mr. Schiff, then Plaintiff's allegations amount to a claim that SkiHawk, Mr. Borkowski, and Mr. Hawkins "failed to disclosed conflicts **to themselves**." (Doc. No. 23 at 14-15 (emphasis in original).) Defendants

---

[9] In the context of hedge funds, courts have found that "clients" are limited to the investment fund itself, and not the fund's investors. *See, e.g.*, *Mannion*, 789 F. Supp. 2d at 1337-38; *Goldstein*, 541 F.3d 880. Outside of that context, however, courts have found that a fund's investors constitute "clients" where an adviser-investor relationship exists. *See, e.g.*, *S.E.C. v. Strong Inv. Mgmt.*, No. 8:18-cv-00293-JLS-DFM, 2018 WL 8731559, at *4 (C.D. Cal. Aug. 9, 2018); *S.E.C. v. Sentinel Mgmt. Gp., Inc.*, No. 07 C 4684, 2012 WL 1079961, at *12 (N.D. Ill. Mar. 30, 2012). Factors in determining whether an adviser-investor relationship exists include: whether investors receive advice directly from the investment adviser; whether investors are active in the fund's investment decisions; whether the investment adviser has an obligation to ensure that the fund's investment decisions are appropriate investments for each shareholder; and whether the investment adviser's advice is tailored to an investor's particularized needs. *Sentinel*, 2012 WL 1079961, at *12 (citing *Goldstein*).

argue that "failure to disclose information to oneself" is not actionable as a breach of fiduciary duty. (*Id.* at 15.) Accordingly, Defendants maintain that Plaintiff's first and second claims are essentially limited to allegations that SkiHawk, Mr. Borkowski, and Mr. Hawkins breached their fiduciary duties to *investors*, and because they do not owe duties to investors, the claims must be dismissed. (*Id.*)

At the outset, the Court need not consider whether these Defendants breached their fiduciary duties to the Healthcare Fund's *investors*. Nowhere in the Complaint does Plaintiff allege that SkiHawk, Mr. Borkowski, and Mr. Hawkins owed or breached fiduciary duties to the Healthcare Fund's investors. To the contrary, the Complaint specifically alleges: "SkiHawk owed a fiduciary duty *to the Healthcare Fund*"; "Borkowski and Hawkins owed a fiduciary duty *to the Healthcare Fund*"; "SkiHawk, Borkowski, and Hawkins owe *the Healthcare Fund* an affirmative duty"; "Borkowski and Hawkins had conflicts of interest with their client, *the Healthcare Fund*"; "SkiHawk, Borkowski, and Hawkins breached their fiduciary duty *to the Healthcare Fund*"; and "SkiHawk's breach of its fiduciary duty *to the Healthcare Fund*". (Doc. No. 1 at ¶¶ 29, 55, 98, 100-01, 111 (emphasis added).)

Defendants' other arguments are unavailing. They argue that the Healthcare Fund was managed by SkiHawk, and that the Healthcare Fund's general partner is owned by Mr. Hawkins, Mr. Borkowski, and Mr. Schiff, and therefore, these Defendants cannot owe a fiduciary duty to themselves. However, the fact that SkiHawk managed the Healthcare Fund does not nullify its fiduciary duty to the Healthcare Fund, where SkiHawk is a separate entity. *Cf. Sentinel*, 2012 WL 1079961, at *13 (finding that the defendant's "clients" under of the Investment Advisers Act were the investors of its investment portfolios, and not the investment portfolios themselves,

because those investment portfolios were "merely amalgamations of securities" and had no separate legal identity from the defendant). Similarly, the fact that Mr. Hawkins and Mr. Borkowski were owners of the Healthcare Fund's general partner also does not nullify their fiduciary duty to the Healthcare Fund. *See, e.g.*, *Mannion*, 789 F.Supp.2d at 1338-39 (finding that the defendants' "client" under the Investment Advisers Act was the hedge fund itself, despite two of the defendants being principals and co-owners of the companies organized to be the general partner, manager, and investment adviser for the "feeder" hedge funds); *S.E.C. v. Northshore Asset Mgmt.*, No. 05 Civ. 2192(WHP), 2008 WL 1968299, at *6 (S.D.N.Y. May 5, 2008) (finding that the defendant's "clients" under the Investment Advisers Act were the hedge funds themselves, despite the defendant being the managing general partner of the firm organized to manage those hedge funds, and despite that firm being the general partner of one of the hedge funds).

In short, Plaintiff's allegations are sufficient to survive a motion to dismiss. The Complaint alleges that SkiHawk, Mr. Borkowski, and Mr. Hawkins, as investment advisers, owed the Healthcare Fund a fiduciary duty of utmost good faith, were obligated to provide full and fair disclosure of all material facts, were required to employ reasonable care to avoid misleading their clients, and had a duty to act in their clients' best interests. It also alleges that SkiHawk, Mr. Borkowski, and Mr. Hawkins engaged in conflicting transactions with the Healthcare Fund without disclosing their alleged conflicts or obtaining consent, thereby breaching their fiduciary duties. Finally, it alleges that the Healthcare Fund's PPMs and financial statements failed to disclose those conflicts, and falsely described the way conflicts would be managed. When accepted as true and viewed in the light most favorable to Plaintiff, these

allegations plausibly show that SkiHawk, Mr. Borkowski, and Mr. Hawkins breached their fiduciary duties to their client, the Healthcare Fund.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED THAT**:

(1) "Defendants Clement M. Borkowski, The Convergence Group, LLC, Sean A. Hawkins, Joseph P. Schiff, and SkiHawk Capital Partners, LLC's Partial Motion to Dismiss the Complaint for Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6)" (Doc. No. 19) is **DENIED**.

**DATED**: March 20, 2023.

BY THE COURT:

Maritza Dominguez Braswell
United States Magistrate Judge